IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 3, 2014

## CHARLIE LOVELL LEAVY, III v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Tipton County**
**No. 7058      Honorable Joe H. Walker, III, Judge**

_____

**No. W2013-00719-CCA-R3-PC  - Filed July 16, 2014**

_____

The Petitioner, Charlie Lovell Leavy, III, appeals the post-conviction court's denial of relief from his convictions for aggravated burglary, burglary of a building, theft over $1,000, felony evading arrest, and simple assault.  On appeal, the Petitioner argues that he received ineffective assistance of counsel.  Upon our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ALAN E. GLENN and JEFFREY S. BIVINS, JJ., joined.

Charles F. Brasfield, Covington, Tennnessee, for the Defendant-Appellant, Charlie Lovell Leavy, III.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; Mike Dunavant, District Attorney General; and Jason Poyner, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

On February 28, 2012, the Petitioner entered guilty pleas to aggravated burglary, burglary of a building, theft over $1,000, and felony evading arrest in case number 7058 and the reduced charge of simple assault in case number 7057.[1]  He received an effective sentence of six years at 35% to be served concurrently with a four-year sentence in Lauderdale County.

_____

[1] The indictment and judgment forms are not included in the record on appeal.  We glean the information about the Petitioner's guilty pleas from the February 28, 2012 guilty plea hearing.

At the guilty plea hearing, the State summarized the underlying facts of the Petitioner's convictions as follows:

Case Number 7058:

[O]n November 19, 2010, Deputy Green arrived at a . . . Canaan Grove address in Mason, in Tipton County, regarding an aggravated burglary complaint. He observed the back door to Mr. [Terry] Twisdale's house had been kicked in. The shop door behind the residence was kicked in.

Wayne Green and Tony Byrd, who were there, stated that they had observed two male blacks driving at a high rate of speed on a camouflage 4-wheeler near the residence, and Mr. Bryd stated he was almost struck by the 4-wheeler, and also that there was a blue passenger car with a back glass completely missing which was traveling behind the 4-wheeler. The registered owner of that vehicle was the co-defendant in the other case, Mr. [Henry] Olden.

Detectives Rodriquez and Wassel made the scene and spoke with the homeowner, Mr. Twisdale, who stated that his flat-screen television and Nintendo Wii were missing from the residence, and a camouflage Honda 4-wheeler was also missing from the shop. That's what had earlier been observed being driven with the two male blacks.

The estimated damage to the doors was over [$]500 and the damage to the items – or the value of the items missing was [$]5,000. Deputies with the sheriff's office located the blue passenger car, and at that time Mr. Olden and Mr. Goodwin were taken into custody. And there would be some testimony [the Petitioner] fled from the deputies, and [the Petitioner] was unable to be apprehended at that time. That was part of the State's thinking in proceeding by warrant against Mr. Olden and Mr. Goodwin, in seeing what the proof developed on [the Petitioner]. And, in fact, he was indicted in a matter that went straight to the Grand Jury in 2011.

Mr. Olden and Mr. Goodwin were questioned, and they confessed to the aggravated burglary and also to a residence which was in Fayette County, all part of the same transaction.

There were three male blacks that were observed during the process. Mr. Henry [Olden] gave a statement and Mr. Oscar Goodwin gave a statement

that . . . [the Petitioner] was the one that got away[.] . . . Mr. [Olden] has always maintained that [the Petitioner] was the third individual who got away.

Sometime during the course of these proceedings I got a letter, and [defense counsel] is aware of it. Mr. Goodwin, from the penitentiary, wrote a letter that [the Petitioner] had nothing to do with the burglary, that he lied about him being there, that he, Mr. Goodwin, was high off pills, weed, and more.

[I]f [Mr. Goodwin] were to testify about that, I think under all the facts it would not be true. [Defense counsel] knows about this. It would be obviously exculpatory if it were to be believed, but we think that Mr. [Olden]'s testimony would be enough, and in fact Mr. Goodwin had earlier maintained that [the Petitioner] was the third individual. So we believe we can carry our burden.

Case Number 7057:

That is an unrelated case for which . . . [the Petitioner] was indicted again . . . for aggravated assault on a John Richard Gemesis, be [sic] the causing of serious bodily injury.

At that time of the event, which was February 3, 2011, both individuals were in the Tipton County Jail. There was a fight in C pod. Mr. Gemesis was found with injuries to his face, hand, neck and hands. Investigation revealed that there had been - - a preacher had been - - the person described as the jail preacher the evening before had been in the jail, and he was met with cursing and yelling during his sermon, and Mr. Gemesis who told [the Petitioner] he shouldn't be disrespectful to the preacher.

And according to Mr. Gemesis, [the Petitioner] became irate, made threats, went back to his cell, came back with a tray, which was the issue tray there in the jail, a thick, plastic food tray. According to Mr. Gemesis[, the Petitioner] grabbed him and pulled him to the floor and hit him in the face with his fist, kicked him, and bit him on the arm, and spit on his face.

Several inmates gave statements. Unfortunately, as these things often are, the statements were more or less divided among racial – between racial lines. Mr. Gemesis is white and [the Petitioner] is African-American.

However, there is no doubt that Mr. Gemesis was hit. There might be some doubt – we think there is less doubt that the tray could be a deadly weapon.

There is an issue as to the serious bodily injury, whether the injuries sustained rose to the level of serious bodily injury. The State is willing to reduce that charge to a simple assault and recommend a sentence of 11 months and 29 days concurrent with [Case Number] 7058.

Defense counsel stipulated that there was a factual basis for the Petitioner's guilty plea and asked the trial court to accept the State's recommendation.

The trial court then engaged in a dialogue with the Petitioner regarding his desire to plead guilty. The court explained to the Petitioner his rights and the rights he would be giving up by pleading guilty. The Petitioner indicated that he understood his rights and had discussed the plea agreement with his attorney. The court told the Petitioner he was charged with felony offenses in two separate cases and then reviewed the terms of the plea agreement with the Petitioner:

| | |
|---|---|
| COURT: | In Docket 7057 you are charged with a C felony of aggravated assault. A C felony for a multiple offender carries not less than six and up to 10 years. In that case you're entering a plea to a misdemeanor assault that carries 11 months and 29 days. Is that your understanding of the plea arrangement? |
| PETITIONER: | Yes, sir. |
| COURT: | In Docket Number 7058 you are charged in Count 1 with a C felony. A C felony for a multiple offender carries six to 10 years. The State is recommending the minimum sentence of six years; |
| | In Count 2 with a D felony that carries four to eight, and the State is recommending the minimum sentence of four [years]; |
| | In Count 3 with a D felony, again the State is recommending a four-year sentence; |

And in Count 4 an E felony that carries two to four years, all to run concurrent so there will be a six-year sentence in 7058.

Is that your understanding of the plea arrangement in that case?

PETITIONER:    Yes, sir.

COURT:    The State is further recommending that these all run concurrent and concurrent with the sentence you're currently serving.

The Petitioner indicated that he was satisfied with his counsel's representation and that no one had forced him to enter a plea of guilty. The court then accepted the Petitioner's guilty pleas and sentenced the Petitioner in accordance with the plea agreement to an effective six-year sentence to run concurrently with the sentence the Petitioner was already serving.

On November 13, 2012, the Petitioner filed a timely pro se petition for post-conviction relief. He was subsequently appointed counsel and an amended petition was filed on his behalf on March 4, 2013, raising, inter alia, claims of ineffective assistance of counsel.

At the March 6, 2013 post-conviction hearing, counsel testified that the Petitioner was already serving a four-year sentence in the Department of Correction for an offense committed in Lauderdale County when counsel negotiated the package plea deal in Tipton County case numbers 7057 and 7058. Counsel communicated with the Petitioner "multiple times" during the negotiation process before the Petitioner accepted the plea agreement from the State. The Petitioner rejected an earlier offer from the State because he wanted to see if the State would consider "a better deal" in which the Tipton County sentences would run concurrent with the Lauderdale county.

Counsel received a letter from the Petitioner with three plea agreement proposals to submit to the State: (1) a six-year sentence at 35% for time already served on the Lauderdale County case; (2) a four-year sentence at 30% to run concurrent with the Lauderdale County sentence; or (3) a dismissal of the Tipton County charges. Counsel was unable to obtain any of these plea deals from the State. Counsel received another letter from the Petitioner stating, "I'll take [the State's plea offer] only if I get it on parole with no prison time, because the period of incarceration I already have will be served. I will take house arrest and parole,

because I don't need alot [sic] of time a wild." Counsel stated that based upon conversations with the Petitioner, she understood "a wild" to mean consecutive sentences.

The Petitioner told counsel that there was insufficient evidence in case number 7058; however, through counsel's own investigation, including speaking with one of the investigators, counsel learned that the Petitioner was identified as one of the occupants of the four-wheeler. Counsel acknowledged that she received a letter from co-defendant Oscar Goodwin in which he denied that he identified the Petitioner as the other perpetrator. Counsel listened to audio recordings of the statements given to the police by the co-defendants and allowed the Petitioner to listen to the recordings. According to counsel, there "wasn't any real dispute about what had happened or what the testimony would be." She testified that the "best offer [she] felt that [she] could obtain" was a concurrent six-year sentence at 35% based on the evidence in the case.

Counsel testified that she told the Petitioner "very clearly" that she could not obtain the plea deals that he had outlined in his letters. She reviewed the State's evidence and discussed the terms of the package plea deal offered by the State and the Petitioner's other options with the Petitioner for "several hours." She "made it clear" to the Petitioner that she was prepared to go to trial if he chose to reject the State's offer and proceed to trial. The Petitioner made the decision to accept the State's package plea offer.

After making the decision to accept the State's offer but before entering his plea, the Petitioner signed another acknowledgment form prepared by counsel. The form, which was admitted into evidence, outlined the terms of the plea offer as follows:

> I wish to **accept the State's offer** to plead guilty to the indicted charges in #7058 (Aggravated Burglary, Burglary, Theft, and Evading Arrest) and a **reduced** charge in #7057 (from Aggravated Assault to Misdemeanor Simple Assault).
>
> If I accept this offer, I will receive an effective 6 year sentence at 35%, which means that I will have to serve at least 35% of 6 years before I will be eligible for parole.
>
> I further understand that if I accept this offer, **it will be up to the Judge** whether to grant me the time I have spent in jail . . . and whether to run the sentences concurrent with the sentences I am already serving in TDOC[.]

> I understand that there is nothing to guarantee that the parole board will grant parole at any time during my 6 year sentence; therefore, I could be required to serve the entire 6 years.

The form also indicated that the Petitioner was afforded an opportunity to listen to the audio recordings of the statements made by co-defendants Goodwin and Olden and to read the letter from co-defendant Goodwin in which he denies that he gave the Petitioner's name as an accomplice to the police. Counsel testified that she went through the form with the Petitioner and had him repeat back all of the information in the acknowledgment, including "whether or not he understood that this . . . six-year sentence was what he was going to get, in effect." When asked whether she believed that the Petitioner understood that his sentence would run longer than the four-year sentence he was serving in Lauderdale County, counsel responded, "Absolutely. That was made very clear to him. Six years is longer than four."

After the Petitioner's guilty plea hearing, counsel received another letter from the Petitioner, in which he expressed his belief that he had been misled about the terms of the plea agreement. The letter stated that the Petitioner believed he "was getting the sentence on probation" and reminded counsel that the Petitioner "told [counsel] [he] would go to trial before [he] took a wild sentence." Counsel testified that she still did not have any concerns about whether the Petitioner understood the terms of his plea agreement after receiving this letter and stated that she "felt like this was an attempt of another inmate to mislead" the Petitioner. She reiterated that she had "[n]o doubt in [her] mind that she was clear" with the Petitioner about his plea agreement and the difference in a concurrent and consecutive sentence. Counsel testified that the Petitioner received a concurrent sentence and did not receive a "wild" or consecutive sentence.

Counsel acknowledged that she had concerns about the Petitioner's mental capacity during her representation and took steps to have him evaluated. He was found to be competent to stand trial. Counsel testified that the Petitioner seemed to understand the terms of the plea agreement "quite well at the time," and opined that additional time to explain the agreement would not have improved his understanding. She stated that she made it very clear to the Petitioner that "no probation or alternative sentences could be had. [The Petitioner] would have to go through the parole procedures." She confirmed that there was no mention of probation during the Petitioner's guilty plea hearing. She knew of no circumstances in which the State would agree to, and the trial court would approve of, probation or an alternative sentence for a defendant who was already serving a sentence in the penitentiary.

The Petitioner testified that counsel represented him in the instant case and that he sent her several letters about possible plea options he would consider. In his initial letter, the

Petitioner outlined three plea options, none of which were agreed to by the State. He sent counsel a second letter in which he told counsel that he would accept a package plea deal if he received credit for time already served for his Lauderdale County conviction and parole or house arrest. The Petitioner explained that a "wild" sentence refers to a consecutive sentence. The Petitioner described a concurrent sentence as "just a straight sentence" and a consecutive sentence as "just one after the other." The State did not accept any of the Petitioner's proposed plea offers.

The Petitioner recalled that on the day of the plea, he listened to the audio recordings of statements made by co-defendants Olden and Goodwin and discussed the State's plea offer with counsel. He told counsel he would accept the offer "if it was on probation and it [ran] concurrent with [his] Lauderdale case[.] If not, [he] wanted to proceed to trial." Counsel spoke with the prosecutor and then informed the Petitioner that she had obtained "the deal [he] wanted this time." The Petitioner believed that under the terms of the agreement he would be released on probation after he completed service of his Lauderdale County sentence. He learned from a counselor at the penitentiary that his sentence had been "extended" and that he would have to serve the remainder of his Tipton County sentence in confinement. The Petitioner testified that he would not have accepted the plea offer and would have proceeded to trial had he known that he would have to serve his six-year sentence in confinement.

On cross-examination, the Petitioner testified that he personally wrote the letters to counsel but stated that he has difficulty reading. He confirmed that he signed the acknowledgment form that outlined the terms of his plea agreement prior to pleading guilty but denied that he read or reviewed the document with counsel before signing it. He explained that he did not believe he needed to review the document because he "was just trusting [counsel's] word" that she had obtained the deal he wanted. He recalled the trial court asking him multiple questions at the guilty plea hearing and confirmed that there was no mention of probation during the hearing. According to the Petitioner, the trial court asked him whether he understood the charges but did not ask him whether he understood the manner of his sentence.

Following the hearing, the trial court took the matter under advisement and denied relief in a written order on March 6, 2013. In relevant part, the order states:

> [The] Petitioner was sentenced in RD 5881 and RD 6380 to suspended sentences. The suspended sentences were revoked after a hearing on January 18, 2011. In this case (RD 7058) [the] [P]etitioner entered a guilty plea to felony offenses which occurred while on probation. He received agreed

-8-

sentences of an effective 6 years concurrent. He was transported to TDOC to enter the pleas. He was in custody of TDOC since before October 2011.

In August 2012, the [P]etitioner sent a letter requesting a suspended sentence. He requested to "serve the balance of his sentence on parole." The court entered an order in August 2012 in response to that letter that the court lost jurisdiction, and relief was up to the parole board.

The court finds that the [P]etitioner understood his plea and sentence, but is not happy that he has not received parole. He accepted the plea deal, but now maintains he did not understand. He has failed to show counsel was deficient.

[Counsel] testified with regard to the meetings and discussions with [the] [P]etitioner. She testified that the [P]etitioner understood the terms of the plea, and that the 6 year sentence would be served in TDOC, where he was currently incarcerated. She discussed the facts with [the] [P]etitioner and the possible defenses.

Sentencing is not a proper subject for post-conviction relief. [T.C.A. §§] 40-35-106 and 40-25-401. The plea was explained to [the] Petitioner in detail. Upon his plea, other charges were reduced to a misdemeanor. The plea agreement ran this case concurrent with Lauderdale County convictions, and with the convictions he was currently serving in TDOC. The range of punishment was explained to him[] as being 6 to 10 years as a multiple offender, with the state recommending the minimum sentence.

It was explained to [the] [P]etitioner at the plea hearing that the sentences would run concurrent and that he would have 6 years.

He stated he understood this.

The Court finds that the [P]etitioner knowingly and voluntarily entered a plea of guilty.

The Court finds that [the] [P]etitioner has failed to establish the factual allegations contained in his petition by clear and convincing evidence. [T.C.A.] § 40-30-210. The [P]etitioner has not shown that (a) the services rendered by trial counsel were deficient and (b) the deficient performance was prejudicial. The [P]etitioner has not shown that the services rendered or the

advice given was below the range of competence demanded of attorneys in criminal cases. The [P]etitioner has not shown that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.

[T]he petition for post[-]conviction relief is denied and dismissed.

It is from this order that the Petitioner appeals.

## ANALYSIS

On appeal, the Petitioner argues that he received ineffective assistance of counsel, based on counsel's representation of him during the plea negotiation stage.[2] The State responds that the Petitioner failed to establish that counsel's performance was deficient or that the Petitioner was prejudiced as a result of any deficiency, and therefore, he is not entitled to relief. We agree with the State.

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103 (2006). The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal quotation and citations omitted). "The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence." Id. (citing T.C.A. § 40-30-110(f); Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006)). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the

---

[2] In his petition for post-conviction relief, the Petitioner also alleged that his guilty pleas were not knowing and voluntary. The trial court denied relief on this ground, and the Petitioner did not raise it in his brief to this court. Accordingly, we do not address it on appeal.

conclusions drawn from it. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)).

Vaughn further repeated well-settled principles applicable to claims of ineffective assistance of counsel:

> The right of a person accused of a crime to representation by counsel is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. Both the United States Supreme Court and this Court have recognized that this right to representation encompasses the right to reasonably effective assistance, that is, within the range of competence demanded of attorneys in criminal cases.

Vaughn, 202 S.W.3d at 116 (internal quotations and citations omitted).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Id. (citing Strickland v. Washington, 466 U.S. 668, 687 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." Id. at 369 (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694). In order to satisfy the "prejudice" requirement in the context of a guilty plea, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); see Serrano v. State, 133 S.W.3d 599, 605 (Tenn. 2004).

We note that "[i]n evaluating an attorney's performance, a reviewing court must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." State v. Burns, 6 S.W.3d 453,

462 (Tenn. 1999) (citing Strickland, 466 U.S. at 689). Moreover, "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Strickland, 466 U.S. at 688-89. However, we note that this "'deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (quoting Goad, 938 S.W.2d at 369).

In the case sub judice, the Petitioner argues that counsel provided ineffective assistance of counsel by failing to adequately advise him of the terms of his package plea agreement or to ensure that he read and understood the plea agreement prior to pleading guilty. The Petitioner asserts that counsel knew the Petitioner would only accept a plea offer "if probation was part of the deal" but she "clearly negotiated additional time . . . without the availability of probation or alternative sentencing." The Petitioner maintains that counsel's knowledge of the Petitioner's specific requests for a plea agreement and counsel's contradictory actions constituted deficient performance, which prejudiced the Petitioner because had he known or understood that he would be serving his six-year sentence in confinement, he would not have pleaded guilty and would have proceeded to trial.

In denying relief on this claim, the post-conviction court accredited the testimony of counsel over that of the Petitioner and found that counsel adequately informed the Petitioner of the terms of his plea agreement, including the sentence he would be facing. In addition, the court emphasized that the terms of the plea agreement were also explained to the Petitioner at the guilty plea hearing and the Petitioner stated that he understood those terms. Based on these findings, the court concluded that the Petitioner decided to plead guilty after discussing the matter with counsel and considering his options; therefore, the Petitioner failed to establish ineffective assistance of counsel. Upon review, we conclude that the record supports the findings and conclusions of the post-conviction court.

At the post-conviction hearing, counsel testified that she communicated with the Petitioner multiple times during the plea negotiation process and obtained the "best offer" she felt could be obtained in the Petitioner's case. She confirmed that the Petitioner gave her several plea offers to take to the State but the State rejected all of them, which she "very clearly" explained to the Petitioner. When the State made the package plea offer, which was ultimately accepted by the Petitioner, counsel spent several hours discussing the terms of the agreement and the Petitioner's other options with the Petitioner. Counsel testified that she was prepared to go to trial, but the Petitioner decided to accept the plea agreement after considering the State's evidence. The Petitioner's decision was memorialized in an acknowledgment form prepared by counsel and signed by the Petitioner prior to the guilty plea hearing. The form sets out the terms of the plea agreement and specifically states that

the Petitioner would serve six years' confinement with "nothing to guarantee" that he would be granted parole during that time. Although the Petitioner maintained that he did not read the form nor understand its terms, counsel testified that she reviewed the form with the Petitioner and had him repeat back all of the information before he signed it. She testified that it was "made very clear to [the Petitioner]" that his six-year sentence would run longer than the four-year sentence he was already serving and he "absolutely" understood those terms. The post-conviction court accredited counsel's testimony, and we will not re-weigh or re-evaluate this evidence on appeal. See Vaughn, 202 S.W.3d at 115. Accordingly, the Petitioner has failed to establish ineffective assistance of counsel.

## CONCLUSION

Based on the foregoing authorities and analysis, we affirm the judgment of the post-conviction court.

_____
CAMILLE R. McMULLEN, JUDGE